David C. Parisi (Cal. Bar. No. 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (Cal. Bar No. 188814)
shavens@parisihavens.com
PARISI & HAVENS, LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91043
(818) 990-1299
dcparisi@parisihavens.com
shavens@parisihavens.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| DELORES LEWIS, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>VERIZON COMMUNICATIONS, INC., a Delaware corporation, ENHANCED SERVICES BILLING, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. CV10-2337 PSG(MANx)<br><br>**PLAINTIFFS' NOTICE AND MOTION TO REMAND AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**<br><br>Date: June 21, 2010<br>Time: 1:30 p.m.<br>Judge: Hon. Philip S. Gutierrez<br>Courtroom: 808<br>Action Filed: 12/9/2009<br>Action removed: 3/30/2010<br><br>No Trial Date Set |

*Notice of Motion and Motion to Remand*

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on June 21, 2010, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Philip S. Gutierrez of the United States District Court for the Central District of California, Western Division, located at 725 South Figueroa Street, Courtroom 808, Los Angeles, CA 90012, Plaintiff Delores Lewis, by and through her counsel, will and hereby does move under 28 U.S.C. § 1447(c) for an order remanding this action to the Superior Court of the State of California for the County of Los Angeles. Defendant Verizon Communications, Inc., or (Verizon California, Inc.) as the proponent of removal to federal court, bears the burden of showing by a preponderance of the evidence, that removal is proper. As set forth in Plaintiffs' Memorandum of Points and Authorities in Support of Motion to Remand, Defendant has not met that burden, failing to prove that the amount in controversy in this action exceeds $5,000,000 as required by the Class Action Fairness Act of 2005, codified in relevant part at 28 U.S.C. § 1332(d) and 1453(b). Therefore, remand to the Superior Court of the State of California for the County of Los Angeles is warranted. This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 24, 2010 and April 20, 2010. The Parties were unable to reach an accord regarding the relief requested herein. However, the Parties' joint efforts to resolve the issues set forth herein are continuing.

Dated:   April 29, 2010              PARISI & HAVENS LLP


                                     By:   s/David C. Parisi
                                     David C. Parisi
                                     Attorneys for Plaintiff Delores Lewis,
                                     individually and on behalf of a class of
                                     similarly situated individuals

*Notice of Motion*                                                            2
*and Motion to Remand*

# Table of Contents

I.     INTRODUCTION ............................................................................................... 1

II.     BACKGROUND .................................................................................................. 2

III.     LEGAL STANDARD .......................................................................................... 4

IV.     ANALYSIS ........................................................................................................... 5

    A.    Defendant Verizon Bears the Burden of Proving CAFA Jurisdiction ............ 5

    B.    The Amended Complaint does not implicate all of Verizon's or ESBI's premium content revenue. ........................................................................................ 7

    C.    Verizon Cannot Rely on a Request for Attorneys' Fees to Satisfy its Burden of Proof. ............................................................................................................. 12

V.     CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aldrich v. Business to Business Online, Inc.*,
    Case 8:09-cv-01352-DOC-MLG (C.D. Cal. Feb. 12, 2010) ........................................1, 10, 11

*Amezcua v. Cellco P'ship*,
    No. C 08-4390, 2009 WL 1190553 (N.D. Cal. May 4, 2009) ......................................................8

*Baker v. Nextel South Corp.*,
    No. 09-20658, 2009 WL 1703276 (S.D. Fla. May 26, 2009) ...................................................10

*BEMI, LLC v. Anthropologies, Inc.*,
    301 F.3d 548 (7th Cir. 2002) .............................................................................................6, 12

*Brill v. Countrywide Home Loans, Inc.*,
    427 F.3d 446 (7th Cir. Ill. 2005) .................................................................................................7

*Conrad Assocs. v. Hartford Accen. & Indem. Co.*,
    994 F. Supp. 1196 (N.D. Cal. 1998) ........................................................................................12

*Coren v. Mobile Entm't, Inc., et al.*,
    No. 08-05264, 2009 U.S. Dist. LEXIS 41519 (N.D. Cal. Mar. 19, 2009).........................1, 8, 9

*Exxon Mobile Corp. v. Allapattah Servs. Inc.*,
    545 U.S. 546 (2005) ....................................................................................................................4

*Fiddler v. AT&T Mobility, LLC*,
    No. 08 C 416, 2008 WL 2130436 (N.D. Ill. May 20, 2008) ...............................................2, 10

*Foster v. Astro-Med, Inc.*,
    No. C 99-2562 SI, 1999 WL 820198 (N.D. Cal. Oct. 4, 1999) ...............................................12

*Gaus v. Miles, Inc.*,
    980 F.2d 564 (9th Cir. 1992) ...........................................................................................4, 5, 12

*Gray v. Cellco P'ship*,
    No. 08-60146, 2008 U.S. Dist. LEXIS 112003 (S.D. Fla. Mar. 26, 2008) ..........................2, 11

*Guerrero v. Mobilefunster, Inc.*,
    No. C 08 4389, 2009 WL 195918 (N.D. Cal. Jan. 26, 2009) ................................................1, 9

*Guglielmino v. McKee Foods Corp.*,
    506 F.3d 696 (9th Cir. 2007) .................................................................................................5, 6

*Notice of Motion                                                                                                                                      **4**
and Motion to Remand*

*Harris v. Bankers Life and Cas. Co.*,
    425 F.3d 689 (9th Cir. 2005) ..................................................................................5

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)................................................................................................4

*Lowdermilk v. U.S. Bank, Nat'l Ass'n*,
    479 F.3d 994 (9th Cir. 2007) ...............................................................................5, 6

*McAnally Enters. Inc. v. McAnally*,
    107 F. Supp. 2d 1223 (C.D. Cal. 2000) .................................................................5

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*,
    298 U.S. 178 (1936).................................................................................................6

*Paluzzi v. Cellco P'ship*,
    No. 08 C 0405 (N.D. Ill. Apr. 29, 2008)...........................................................2, 11

*Rising-Moore v. Red Roof Inns, Inc.*,
    435 F.3d 813 (7th Cir. 2006) .................................................................................8

*Serrano v. 180 Connect, Inc.*,
    478 F.3d 1018 (9th Cir. 2007) ...............................................................................5

*Singer v. State Farm Mut. Auto. Ins. Co.*,
    116 F.3d 373 (9th Cir. 1997) ...........................................................................6, 12

*Walker v. Motricity, Inc.*,
    627 F. Supp. 2d 1137 (N.D. Cal. 2009) ............................................................1, 6

*Wallace v. Universal Music Group, Inc.*,
    No. CV 08-04553, 2008 U.S. Dist. LEXIS 108859 (C.D. Cal. Sept. 5, 2008)....................1, 10

**STATUTES**

28 U.S.C. § 1332(d) ...........................................................................................................5

28 U.S.C. § 1447(c) (2010).................................................................................................4

CAFA ..................................................................................................................... passim

*Notice of Motion*                                                                                                                5
*and Motion to Remand*

## I. INTRODUCTION

Defendant Verizon Communications, Inc. ("Verizon") improperly removed this case from the Los Angeles County Superior Court to this Court under the guise of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1441, 1446 and 1453 (2005).[1] Under CAFA, the removing party bears the burden of proving, by a preponderance of the evidence, that removal is proper; that is, that each of CAFA's statutory requirements has been met. Verizon failed to satisfy that burden because it has not shown that at least $5 million is in controversy. As a result, the Court should remand this action back to the Los Angeles County Superior Court.

In its Notice of Removal ("Notice"), Verizon argues that CAFA's $5 million jurisdictional threshold has been satisfied because the complaint's allegations place in controversy its total revenue in California, or its total revenue from premium content sales -- figures which purportedly exceed $5 million. This argument is unavailing, and has been rejected time and again by federal courts in this district and across the country.

District Court judges from this District and across the country have continually rejected jurisdiction under the CAFA where defendants produced similar evidence of the amount in controversy as produced here. *See Aldrich v. Business to Business Online, Inc.*, Case 8:09-cv-01352-DOC-MLG (C.D. Cal. Feb. 12, 2010). *See also Walker v. Motricity, Inc.*, 627 F. Supp. 2d 1137, 1141 (N.D. Cal. 2009); *Coren v. Mobile Entm't, Inc., et al.*, No. 08-05264, 2009 U.S. Dist. LEXIS 41519, at *3-4 (N.D. Cal. Mar. 19, 2009); *Guerrero v. Mobilefunster, Inc.,* No. C 08 4389, 2009 WL 195918, at *1 (N.D. Cal. Jan. 26, 2009); *Wallace v. Universal Music Group, Inc.*, No.

---

[1] On April 27, 2010, Plaintiff amended her complaint in order to substitute Verizon California, Inc. for Verizon Communications, Inc. Verizon Communications, Inc. removed this action. It's employee representative who signed a declaration in support of the Notice of Removal, Mr. Glover, identified himself as simply an employee of "Verizon." Both Verizon entities are represented by the same defense counsel.

*Notice of Motion*                                                                                                                                                                                                                                                                    1
*and Motion to Remand*

CV 08-04553, 2008 U.S. Dist. LEXIS 108859, at *2-3 (C.D. Cal. Sept. 5, 2008); *Fiddler v. AT&T Mobility, LLC*, No. 08 C 416, 2008 WL 2130436, at *1-2 (N.D. Ill. May 20, 2008); *Paluzzi v. Cellco P'ship*, No. 08 C 0405 (N.D. Ill. Apr. 29, 2008) (petition for leave to appeal denied); *Gray v. Cellco P'ship*, No. 08-60146, 2008 U.S. Dist. LEXIS 112003, at *3-4 (S.D. Fla. Mar. 26, 2008).

Under CAFA, the removing party bears the burden of proving, by a preponderance of the evidence, that removal is proper; that is, that each of CAFA's statutory requirements has been met. Verizon has failed to satisfy that burden, and as a result, the Court should remand this action back to the Los Angeles County Superior Court.

## II.  BACKGROUND

This action seeks redress for Defendants' alleged profiteering from the placement of charges for "premium content" telephonic services on customers' landline telephone bills without the customers' authorization. (Second Amended Complaint, hereafter "Compl." ¶¶ 8-63.) In the telecommunications industry, "premium content" is a term that encompasses an array of products and services, including, in the case of landline telephone subscribers, diet-monitoring services, web-hosting products, email accounts, office supplies, and other products and services. (Compl. ¶ 11.)

Premium content is provided to telephone subscribers over their landline telephones by a rapidly growing number of third-party vendors. (Compl. ¶ 10.) While premium-content vendors create and often market the premium content, they do not directly bill the telephone subscribers for their products and services. (Compl. ¶ 13.) Instead, premium-content vendors partner with middlemen companies, known as "aggregators." (*Id.*) Aggregators, such as Verizon's Co-Defendant Enhanced Services Billing, Inc. ("ESBI"), serve as conduits between the numerous, diverse and

comparatively small premium-content vendors and the large national telephone carriers, such as Defendant Verizon, and facilitate the premium-content vendors' ability to use a national telephone carrier's network to (i) deliver their services to such carrier's subscribers; and/or (ii) collect payment for their premium-content services from such carrier's subscribers. (Compl. ¶ 13.)  In return, the aggregators and the national telephone carriers each keep a percentage of the premium-content charges collected. (*Id.*)

Premium-content vendors need only a consumer's telephone number to bill the consumer for premium-content services, irrespective of whether the consumer actually agreed to purchase the services. (Compl. ¶ 16.)  Premium-content vendors need only provide an aggregator, such as ESBI, with a landline telephone number and the amount of the premium-content charges, and the aggregator simply transmits that information to the telephone carrier, such as Defendant Verizon, for such telephone number to include on the telephone bill for the respective subscriber. (Compl. ¶ 17.) The premium-content charges typically appear as a cryptic line item on the subscriber's telephone bill, with little or no identifying information. (Compl. ¶ 19.) Telephone subscribers directly pay their telephone carriers, who retain a substantial portion of the proceeds from the premium-content before remitting the remaining monies to the aggregators, who, in turn, retain their share before sending the remainder to the premium- content vendors. (Compl. ¶ 13.)

The premium content industry suffers from a systemic flaw:  The billing and collection systems established by companies such as the Defendants are free of any checks or safeguards to prevent erroneous or unauthorized premium-content charges from being included in customers' telephone bills. (Compl. ¶¶16-20 .)  Given the absence of adequate verification procedures, may be wrongfully placed on a consumer's telephone bill.  Further, "recycled" telephone numbers, misleading

*Notice of Motion and Motion to Remand*                                                                                              3

"consent" procedures during the initial "sign-up," and the absence of valid signature requirements, age confirmations and personal code numbers, all exacerbate the likelihood of unauthorized or false premium content charges appearing on the phone bills of consumers. *(Id.)* As a result, premium-content vendors, aggregators such as Defendant ESBI, and telephone carriers such as Verizon bill and collect charges for premium-content services, in many cases, where the customer never actually ordered the service or authorized billing for the premium content. (Compl. ¶ 15.) Here, Plaintiff Lewis alleges that the Defendants caused her to be billed for premium content that they did not authorize. (Compl. ¶¶ 23-28.)

On December 9, 2009, Plaintiff Lewis filed a class action Complaint against Verizon Wireless, Inc. (incorrectly named) and ESBI, and several Doe Defendants, in the Los Angeles County Superior Court. On February 23, 2010, Plaintiff Lewis filed an Amended Complaint to replace Verizon Wireless with Defendant Verizon. On March 30, 2010, Defendant Verizon filed its Notice of Removal, contending that this Court has original jurisdiction over this action under CAFA. Plaintiff filed a second amended complaint, substituting Verizon California Inc. for Verizon Communications Inc., on April 27, 2010. ESBI has not yet appeared in the matter. Plaintiffs now seek to remand this case back to the Los Angeles County Superior Court.

## III. LEGAL STANDARD

After removal, "[i]f at any time . . . it appears that the district court lacks subject matter jurisdiction, the case *shall be remanded.*" 28 U.S.C. § 1447(c) (2010) (emphasis added). This is because federal courts "are courts of limited jurisdiction." *Exxon Mobile Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 552 (2005); *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). As a result, courts strictly construe the removal statutes against removal jurisdiction and in favor of state court jurisdiction and remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)

*Notice of Motion and Motion to Remand*                                                                                           4

(internal citations omitted) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."); *see Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005) ("[R]emoval statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts."). "[I]t is well established that the plaintiff is 'master of her complaint' and can plead to avoid federal jurisdiction." *Lowdermilk v. U.S. Bank, Nat'l Ass'n*, 479 F.3d 994, 998-99 (9th Cir. 2007); *see McAnally Enters. Inc. v. McAnally*, 107 F. Supp. 2d 1223, 1226 (C.D. Cal. 2000) (remand is warranted for lack of subject matter jurisdiction).

## IV. ANALYSIS

### A. Defendant Verizon Bears the Burden of Proving CAFA Jurisdiction

CAFA provides that "the district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," where there are at least 100 members of the putative class, and at least one member of the putative class is a citizen of a state different from the defendant. 28 U.S.C. § 1332(d). It is the burden of the removing party "to establish a prima facie case of removal jurisdiction." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007); *see Gaus,* 980 F.2d at 566.

When remand is requested on the basis of a failure to satisfy the amount in controversy requirement, there is a "strong presumption" that plaintiff has not claimed an amount sufficient to confer jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). Where a complaint does not specify the amount of damages sought by the plaintiff, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement is met. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)). This is true even where CAFA provides the basis for

removal. *Lowdermilk*, 479 F.3d at 997 (citing *Abrego Abrego*, 443 F.3d at 685 ("Under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction.")). Under this burden, the removing party must establish evidence that it is "more likely than not" that the amount in controversy exceeds $5,000,000. *Guglielmino*, 506 F.3d at 699 (citing *Sanchez*, 102 F.3d at 404).

Conclusory allegations are insufficient to support jurisdiction. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). Furthermore, a court cannot base jurisdiction on the removing party's "speculation and conjecture." *Lowdermilk*, 479 F.3d at 1002 (removing party is not allowed to rely on speculation and conjecture); *BEMI, LLC v. Anthropologies, Inc.*, 301 F.3d 548, 553-54 (7th Cir. 2002) (amount in controversy cannot be based on speculation). Verizon is required to submit "competent proof" of the amount in controversy in order to invoke this court's jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). This it has failed to do.

Plaintiff concedes that Verizon has shown minimal diversity and that the lawsuit concerns over 100 persons. Verizon has failed to demonstrate, however, that the amount in controversy in this case meets or exceeds $5,000,000. Verizon's conclusory statements as to the amount in controversy fail. They evidence precisely the type of "stacking of tenuous inference upon tenuous inference" rejected by the Northern District of California in *Walker v. Motricity Inc.*, 627 F. Supp. 2d 1137, 1143 (N.D.Cal. 2009), where the court remanded the case to state court despite a declaration as to total revenues by the defendant. Although Verizon is entitled to submit the Glover Declaration to support its removal petition, the declaration is incompetent; even if it were competent, it falls far short of establishing that at least $5 million is at issue. In his declaration, Glover provides nothing more than a statement as to the amount of Verizon's gross billings to consumers for ESBI content. Glover's

*Notice of Motion and Motion to Remand*  6

declaration is silent as to the percentage of the premium content charges that were unauthorized. Federal law requires more by way of evidence of the amount in controversy and Verizon's dearth of evidence requires this Court to reject CAFA jurisdiction. Accordingly, the Court should remand this case back to the Los Angeles County Superior Court.

### B. The Amended Complaint does not implicate all of Verizon's or ESBI's premium content revenue.

The Amended Complaint does not implicate all of ESBI's premium content revenue in California, much less Verizon's. As the Amended Complaint states plainly, what is at issue are the unauthorized charges included in that revenue. (*See* Compl. ¶29) (defining class and subclass as those billed "for premium content products and services not authorized by the subscriber"). Plaintiff does not, as Verizon claims, "put 'in controversy' the propriety of all charges billed by Defendants." (Notice, ¶17.) Verizon cites no authority to support its claim that all premium content charges are at issue in this matter.

Verizon's reliance on Plaintiff's claims for restitution and damages for acts of unfair competition and for restitution under the UCL (Notice, ¶¶17-18) does nothing to place its, or ESBI's, entire revenue or premium content revenue at issue. The Amended Complaint's allegations do not implicate all of its premium content revenue, much less all of its total revenue. In the Complaint, Plaintiff and the class seek redress only for those charges that: (a) were for premium content products and services; and (b) were unauthorized. (Compl., ¶29.) This is significant because it is the plaintiff who frames the amount in controversy, not the defendant. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. Ill. 2005) (amount in controversy "concerns what the plaintiff is claiming"). Verizon is then required to provide proof of "what the stakes of the litigation [actually] *are* given [plaintiffs'] actual demands." *Id.*; *see also*

*Notice of Motion* 7
*and Motion to Remand*

*Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006) (removing defendant must provide proof of "what the plaintiff hopes to get out of the litigation"). Plaintiff has placed only unauthorized premium content charges at issue, not total revenues or total premium content revenues. And, in light of the allegations of the Complaint, the affirmation in the Declaration of Paul Glover that Verizon billed over $5,000,000.00 to ESBI "subscribers" from 2006 to the present (Notice Ex. B, Declaration of Paul E. Glover ("Glover Decl."),¶4), is not competent proof of the stakes of this litigation.

Courts across the country have rejected the very position taken by Verizon in its removal papers. This very issue was addressed, and Verizon's position rejected, in *Amezcua v. Cellco P'ship*, No. C 08-4390, 2009 WL 1190553, at *2 (N.D. Cal. May 4, 2009), which rejected a defendant's similar argument in a similar suit against unauthorized premium content charges, for mobile telephones. The *Amezcua* court found that such allegations:

> shed little light on the extent of the alleged "practice." That [Defendant] engages "continually" in the alleged practice does not establish what percentage of Defendants' revenues properly may be considered "unauthorized." The allegation that [Defendant's] practices result in the billing of a "large" number of people for unauthorized services is no more helpful. … '[a] district court ... is not permitted to engage in th[e] type of guesswork' that [Defendant] urges upon this Court.

*Id.*

The Northern District of California similarly remanded the case of *Coren*, 2009 WL 764883, under circumstances almost identical to those present in this case. Coren filed his action in California Superior Court, seeking redress for the defendants' levying of unauthorized premium content charges on a wireless account. *Id.* at *1. The action was later removed based upon the contention that the defendants' total revenue—$9,500,000—was in controversy. *Id.* at *2. Coren sought remand, arguing

that only those charges that were in fact unauthorized were in controversy, and defendants had failed to make any showing in that regard. *Id.* The court agreed and held that:

> The Court concludes that Defendants characterize the complaint too broadly. The complaint alleges only that Defendants' billing process increases the likelihood of false charges to the consumers. *See* Compl. ¶ 16. Moreover, the complaint defines the class to include only "wireless telephone subscribers who suffered losses or damages as a result of MEI billing for mobile content products and services not authorized by the subscriber." Compl. ¶ 42. The claim thus includes only *unauthorized charges*, not *all revenues* from *all customers*.

*Id*. Approximately two months before *Coren* was decided, the Northern District of California remanded a similar action captioned *Guerrero*, 2009 WL 195918, and once again under nearly identical circumstances. Guerrero filed her action in California Superior Court, seeking redress for the defendant's involvement in cramming. *Id.* at *1. The action was later removed based upon the contention that defendant's total revenue—$29,300,000—was in controversy. *Id.* Guerrero sought remand, because the defendant failed to make any showing of the actual amount in controversy—unauthorized mobile content charges. *Id.* The Court agreed and found that:

> Defendants characterize Plaintiff's complaint too broadly. Plaintiff's claim includes charges for unauthorized services, not all amounts . . . billed and collected . . . . To conclude that more than $5 million is in controversy, the court would have to speculate as to the size of the class and the average amount of recovery for each class member, or simply guess at how much . . . revenue is relevant to the action. Such speculation is an insufficient basis for the assertion of subject matter jurisdiction.

*Id*.

*Notice of Motion and Motion to Remand*            9

At least two courts in this District have also followed the same logic as these cases. In *Wallace*, 2008 U.S. Dist. LEXIS, Judge R. Gary Klausner of this court rejected a very similar argument as raised here. The removing defendant, Universal Music Group, Inc., argued that to find CAFA's $5 million jurisdictional requirement satisfied, the Court need only assume that 1% of U.S. mobile phone users received unauthorized mobile content related to Universal. The Court refused to make such an assumption and found instead that Universal "failed to establish, beyond mere speculation, that the amount in controversy more likely than not exceeds $5 million . . . ." *Id.* at *2-3. More recently, Judge David O. Carter reached a similar conclusion in *Aldrich v. Business to Business Online, Inc.*, Case 8:09-cv-01352-DOC-MLG (C.D. Cal. Feb. 12, 2010). The *Aldrich* case bears striking similarity to the present case, and should be remanded on the same grounds. That case, like this, involved landline premium content, and the removing defendant claimed that all of AT&T's landline premium content was at issue. *See* Aldrich, No. 09-1352, slip. op at 3. Judge Carter rejected that claim, holding that the Defendant provided "no evidence of the prevalence of unauthorized billing of premium content, nor does Defendant's briefing provide any basis for an estimate. As a result, the amount in controversy is unknown." *Id.* at 4. He cautioned that "the Court will not engage in inappropriate guesswork to attempt to determine that amount" of unauthorized charges. *Id*.

Courts across the nation have also upheld this same analysis. *See Baker v. Nextel South Corp.*, No. 09-20658, 2009 WL 1703276, at *2 (S.D. Fla. May 26, 2009) ("Defendants estimate that Sprint generates 'in excess of $30 million in revenue related to premium mobile content from wireless subscribers in Florida,' but they offer no evidence as to what subset of that $30,000,000 is at issue here."); *Fiddler*, 2008 WL 2130436, at *2 (holding that defendants' evidence of "total sales during the relevant time period brings Defendants no closer to establishing the amount in

*Notice of Motion and Motion to Remand* 10

controversy in this case since Defendants have not provided even an estimation of the portion of total sales implicated by [plaintiff's] claims"); *Gray*, 2008 U.S. Dist. LEXIS 11200, at *21 (refusing to speculate as to the size of the class and the claims of each class member, or to assume that a certain percentage of charges were unauthorized); *Paluzzi*, No. 08 C 0405 (petition for leave to appeal denied).

The authorities are uniform – a defendant cannot properly establish CAFA jurisdiction in a premium content case by merely establishing its total revenues from premium content, much less by a vague statement that such revenues "exceed $5,000,000.00," as claimed by Verizon.

Plaintiff's requests for injunctive and declaratory relief do not help Verizon's argument, either. Plaintiff does request an injunction to require Defendants to implement adequate billing procedures, but the language in the *ad damnum* and elsewhere in the Amended Complaint (see, e.g, Compl., ¶ 28), contains no request for relief that affects all premium content. Verizon puts forth no evidence or argument to suggest that the cost of such an injunction would support CAFA jurisdiction, and points to no authority to suggest that a request for injunctive relief implicates the entirety of a corporation's revenues, or even an entire segment of such revenues - if this were true, any request for injunctive relief would give rise to federal jurisdiction in a class action suit. This simply is not the law. *See Aldrich*, No. 09-1352, slip op. at 4 ("Through injunctive relief, Plaintiffs do not seek damages in the amount of all premium charges.").

Plaintiff Lewis has placed only unauthorized premium content charges at issue, not total premium content revenues. And, in light of her allegations, the total premium content revenue of Verizon, or of ESBI, is not competent proof of the stakes of this litigation. It is therefore improper for Verizon to simply construe the complaint in an overly broad manner in an effort to establish CAFA jurisdiction.

*Notice of Motion and Motion to Remand*  11

### C. Verizon Cannot Rely on a Request for Attorneys' Fees to Satisfy its Burden of Proof.

Additionally, Verizon relies upon a request for attorneys' fees to take the amount in controversy past the $5,000,000 threshold. (Notice, ¶20.) Verizon cannot rely upon attorneys' fees to bolster its case - it provides no estimate of such fees. Verizon simply asks this Court to assume, on faith, that such fees will be substantial. Such assumptions, however, cannot form the basis for the exercise of CAFA jurisdiction. Federal law requires more. *Gaus*, 980 F.2d at 567; *see also Singer*, 116 F.3d at 377 (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)) ("[R]emoval 'cannot be based simply upon conclusory allegations' where the ad damnum is silent."); *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 553-54 (7th Cir. 2002) (amount in controversy cannot be based on speculation). Thus, the proper estimate of attorneys' fees should be the amount of fees incurred up until the time of removal. *See Conrad Assocs. v. Hartford Accen. & Indem. Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. 1998); *Foster v. Astro-Med, Inc.*, No. C 99-2562 SI, 1999 WL 820198, at *4 (N.D. Cal. Oct. 4, 1999). At this time, it is unlikely that Plaintiff's attorneys' fees contribute substantially to the $5,000,000 threshold. At least, Verizon has not shown that they do. The motion to remand should be granted for this additional reason.

### V. CONCLUSION

Ultimately, it is Defendant Verizon's burden to prove that $5 million is at issue in this case. Defendant Verizon has failed to provide any competent evidence as to the amount in controversy, and certainly has not met its burden by a preponderance of the evidence. In light of the foregoing, and the strong presumption against removal, Plaintiff's original choice of forum should not be disturbed.

*Notice of Motion and Motion to Remand*                                                                                                         12

**WHEREFORE**, Plaintiff Dolores Lewis respectfully requests this Honorable Court (a) grant her motion to remand, (b) remand this case to the Los Angeles County Superior Court, or, in the alternative, reserve its ruling on Plaintiffs' motion to remand and grant Plaintiff leave to conduct limited discovery into Defendants' revenue derived from unauthorized charges, and (c) grant such other and further relief as this Court deems equitable and just.

Respectfully Submitted,

Dated:   April 29, 2010                PARISI & HAVENS LLP


By:   s/David C. Parisi
David C. Parisi
Attorneys for Plaintiff Delores Lewis, individually and on behalf of a class of similarly situated individuals